AO 91 (Rev. 11/11) Criminal Complaint

FILED
United States District Court
Albuquerque, New Mexico
Erik Paltrow
Clerk of Court

# UNITED STATES DISTRICT COURT

for the

District of New Mexico

| | | |
|---|---|---|
| United States of America<br>v.<br>Angel RAMIREZ<br><br>*Defendant(s)* | ) | Case No. **26mj5800** |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of October 29, 2026 in the county of Bernalillo in the District of New Mexico, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(vi); | Possession with Intent to Distribute 400 Grams and More of Fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide); 3; |
| 18 U.S.C. § 924(c)(1)(A)(i); | Using and Carrying a Firearm During and in Relation to a Drug Trafficking Crime, and Possessing a Firearm in Furtherance of Such Crime; |
| 18 U.S.C. § 2 | Aiding and Abetting. |

This criminal complaint is based on these facts:

See attached affidavit prepared by DEA SA Jennifer T. Hernandez and approved by AUSA Mark A. Probasco

☑ Continued on the attached sheet.

Jennifer T Hernandez
*Complainant's signature*

DEA SA Jennifer T. Hernandez
*Printed name and title*

Telephonically sworn and electronically signed

Date: 10/29/2026

Jennifer M. Rozzoni
*Judge's signature*

City and state: Albuquerque, NM

Jennifer M. Rozzoni, U.S. Magistrate Judge
*Printed name and title*

Print Save As... Attach Reset

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Jennifer T. Hernandez, Special Agent ("SA") of the Drug Enforcement Administration ("DEA"), being duly sworn, depose and state as follows:

## INTRODUCTION

1. I am a Special Agent (SA) with the Drug Enforcement Administration (DEA) and have been employed since August 2023. I am currently assigned to the Albuquerque District Office (ADO), charged with investigating drug trafficking and money laundering violations under Titles 18 and 21 of the United States Code.

2. I have received 16 weeks of specialized training in Quantico, Virginia, pertaining to drug trafficking, money laundering, undercover operations, and electronic and physical surveillance procedures, confidential source operations, criminal law, and investigations involving federal electronic surveillance statutes, to include Title III wiretaps, drug identification, search warrants, and vehicle stops.

3. My experience as a Special Agent includes, but is not limited to, conducting electronic and mobile surveillance, executing search warrants, handling and processing evidence, undercover operations, writing reports, managing cases, monitoring Title III interceptions, authoring T-III applications, working related investigations, and corresponding with Assistant United States Attorneys (AUSAs) and judges. I have participated in investigations involving purchases from suspected drug traffickers using both undercover operatives and confidential sources. I have spoken to, and regularly work with, other law enforcement officers with similar experience. I also have experience in analyzing and interpreting drug codes and cryptic dialogue used by drug traffickers.

4. As a result of my training and experience, I am familiar with how various drugs are

ingested and the typical distribution and trafficking methods used by drug dealers and traffickers. In addition, I am also familiar with the typical methods used by traffickers to "courier" and clandestinely transport controlled substance through airports and by common carriers such as the U.S. Mail, small parcel carriers, and freight services. I am familiar with the communication methods drug traffickers use, including common patterns of telephonic phone communication between drug traffickers, their sources of supply, and their customers.

5. I have been involved in an ongoing investigation regarding the distribution of controlled substances, specifically fentanyl and methamphetamine by an organization whose members include Michael TRUJILLO, Roxanne URIOSTE, Angel RAMIREZ and others known and unknown individuals (collectively, the SUBJECTS). Since the investigation's inception, I, as well as other Special Agents and Task Force Officers with DEA and the Internal Revenue Service (IRS), and law enforcement officials from other agencies, have obtained information regarding the illegal drug trafficking of these SUBJECTS and others.

6. I know the facts set forth in this affidavit because of my investigation and interviews with other agents and law enforcement officers. These are not all the facts known to me throughout the course of this investigation, but rather only those that are essential to establish probable cause for charging a complaint against Angel RAMIREZ (hereinafter referred to as ("RAMIREZ") for the federal violation(s) listed herein.

7. This affidavit is made in support of the issuance of a Criminal Complaint charging RAMIREZ with violations of:

i. 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(vi): Possession with Intent to Distribute 400 Grams and More of Fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide);

ii. 18 U.S.C. § 924(c)(1)(A)(i): Using and Carrying a Firearm During and in Relation to a Drug Trafficking Crime, and Possessing a Firearm in Furtherance of Such Crime;

iii. 18 U.S.C. § 2, that being Aiding and Abetting.

**STATEMENT OF PROBABLE CAUSE**

8. The DEA is conducting an investigation into a drug trafficking organization ("DTO") that imports various narcotics into New Mexico, specifically Albuquerque.

9. On October 28, 2026, the Honorable Jennifer M. Rozzoni, U.S. Magistrate Judge for the District of New Mexico, signed a search warrant (MR 26-2119) for 5016 Rincon RD NW, Albuquerque, NM (PREMISES 3, hereinafter "RAMIREZ's Residence")

10. On October 29, 2026, Agents and Officers executed the Search Warrant at RAMIREZ's Residence. While conducting the search, agents and officers encountered Angel RAMIREZ inside of her residence. RAMIREZ was the only adult present in the home. RAMIREZ was then detained pending completion of the search. RAMIREZ's personal belongings were located inside of the master bedroom, including clothes, a purse, and identification. No identification or apparent belongings of her children were located in the master bedroom.

11. During the search of RAMIREZ's residence, Agents and Officers located kilogram quantities of narcotics, dozens of firearms, and multiple bundles of bulk cash inside of the master bedroom and adjoining closet. Inside of the RAMIREZ's closet inside of a duffle bag on top of a gun safe, law enforcement located:

a. Approximately 43.75 kilograms of suspected fentanyl powder, Agents field tested the suspected fentanyl which field tested positive for the presence of fentanyl.

b. Approximately 7.70 kilograms of suspected fentanyl pills marked with M on one side and 30 on the other, Agents field tested the suspected fentanyl pills which field tested positive for the presence of fentanyl.

c. Approximately 4.40 kilograms of suspected heroin, Agents field tested the suspected heroin which field tested positive for the presence of heroin.

d. A white cylinder container with approximately 1036 grams of white powder, Agents field tested the white powder, and it field tested positive for the presence of fentanyl.

12. Throughout the rest of the bedroom and in the duffel bag, law enforcement recovered:

a. Multiple duffle bags with large amounts of US Currency that was also combined with multiple narcotics that is listed above.

b. Agents also located approximately 29 firearms with multiple rounds of miscellaneous ammunition. Numerous firearms were located within the gun safe directly beneath the duffel bag full of narcotics and cash.




*Photographed above are the bulk quantities of cash and fentanyl and other narcotics seized during execution of the warrant on RAMIREZ's residence.*




*Photographed above are the numerous firearms seized during execution of the warrant.*

13. The firearms and narcotics that are listed above were all located in the bedroom that belonged to RAMIREZ. All of the narcotics were located inside of duffel bags located on top of a safe containing firearms. Multiple handguns were recovered from dressers in the master bedroom. Based on my training, experience and knowledge of the facts of the case, I believe that the close proximity of the firearms to the packaged narcotics and cash are indicative of and in furtherance of the trafficking of controlled substances and protection of drug proceeds. Being an inherently unlawful activity, drug traffickers rely on violence and the threats of violence in order to protect their sources of supply and the proceeds of their drug trafficking.

14. Upon completion of the execution of the search warrant, RAMIREZ was then transported to the DEA Albuquerque District Office and processed.

15. All of the events described above occurred in Bernalillo County, in the District of New Mexico.

## CONCLUSION

Based on the aforementioned information, there is probable cause to believe that on or about October 29, 2026, RAMIREZ committed violations of:

i. 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(vi): Possession with Intent to Distribute 400 Grams and More of Fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide);

ii. 18 U.S.C. § 924(c)(1)(A)(i): Using and Carrying a Firearm During and in Relation to a Drug Trafficking Crime, and Possessing a Firearm in Furtherance of Such Crime;

iii. 18 U.S.C. § 2, that being Aiding and Abetting.

I declare under the penalty and perjury that the foregoing is true and correct to the best of

my knowledge.

Jennifer T. Hernandez
Special Agent
U.S. Drug Enforcement Administration
Albuquerque District Office

Electronically submitted to me and telephonically sworn on this 29th day of October 2026:

Jennifer M. Rozzoni, United States Magistrate Judge
District of New Mexico
Albuquerque, New Mexico